Laura P. G. **CARBONELL**, Petitioner,

v.

The **IMMIGRATION AND NATURALI-
ZATION SERVICE**, Respondent.

No. 658, Docket 34068.

United States Court of Appeals,
Second Circuit.

Argued April 17, 1972.

Decided May 10, 1972.

Laura P. G. Carbonell, pro se.

Stanley H. Wallenstein, Sp. Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. New York, Joseph P. Marro, Sp. Asst. U. S. Atty., on the brief), for respondent.

Before WATERMAN, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Petitioner Laura P. G. Carbonell seeks review of two orders of the Board of Immigration Appeals, entered on June 24 and September 11, 1969, denying petitioner's motions to reopen her deportation proceedings for the purpose of applying for various forms of discretionary relief from deportation under sections 245(a), 243(h) and 244(a) (1) of the Immigration and Nationality Act, 8 U.S.C. §§ 1255(a), 1253(h) and 1254(a) (1). Finding no abuse of discretion in either of the Board's actions, we deny the petition to review.

Petitioner is a native and citizen of the Philippine Republic. Her stay in this country began in July 1962, when she was admitted, in the quaintly optimistic words of the statute, as a nonimmigrant visitor for pleasure. When she failed to depart as required, in February 1963, deportation proceedings were com-

menced against her before a Special Inquiry Officer in Chicago. At those proceedings petitioner requested an adjustment of her status to that of a permanent resident pursuant to section 245(a) of the Act. She also sought a withholding of deportation under section 243(h) of the Act on the ground that she would be physically persecuted if deported to the Philippines. Both applications were denied. The first, on the ground that petitioner was statutorily ineligible for an adjustment of status since no immigrant visa was immediately available to her. See 8 U.S.C. § 1255(a) (3). The second request was denied principally on the grounds that petitioner had failed to establish either that the approximately 80 criminal charges pending against her in the Philippines "constitute political persecution," or that "the constitutional safeguards existing under the republican form of government in the Philippine Islands are being denied her."[1] The Special Inquiry Officer also denied petitioner the privilege of voluntary departure, but on appeal to the Board that privilege was granted to her. In all other respects, however, the decision of the Special Inquiry Officer was affirmed by the Board in July 1964.

The events that occurred between 1964 and March 1969 need not be chronicled here. It is sufficient to note that petitioner was able to delay her departure and in early 1969 was granted "a final extension of [her] voluntary departure time to March 2, 1969." Five days after that deadline had passed petitioner made her first motion to reopen her deportation proceedings for the purpose of permitting her to re-apply for an adjustment of status or, in the alternative, for a withholding of deportation. In her motion petitioner alleged that 83 of the 86 charges against her alleged co-conspirators had been dismissed in the Philippines. After a review of the entire record the Board denied this motion. As to the application to adjust status, the Board noted in particular that there is still "no visa available to [petitioner]." As to the claim of political persecution, the Board reasonably observed that the new evidence of the dismissal of charges "would weaken rather than strengthen her claim of persecution."[2]

In August 1969, petitioner again moved to reopen her deportation proceedings, this time solely for the purpose of applying for a suspension of deportation under section 244(a) (1) of the Act, 8 U.S.C. § 1254(a) (1). In the motion papers, her attorney alleged that as of July 10, 1969, petitioner completed the seven years physical presence in this country required under section 244(a) (1) and that petitioner also satisfied the section's "good moral character" requirement. The Board denied this motion on September 11, 1969. The Board first noted that in August 1968 petitioner pleaded guilty in a New York State court to three separate indictments for petty larceny (stealing funds intended for welfare recipients while employed as a welfare caseworker). According to the Board, petitioner was thereby "precluded from establishing the good moral character requisite for suspension of her deportation." Second, after recounting the three times petitioner "failed to take advantage of the voluntary departure privilege," the Board concluded: "Under these circumstances, favorable exercise of our discretion to grant suspension of deportation is not merited, in any event."[3]

Upon our independent examination of the record before us we hold that the Board's two refusals to reopen petitioner's deportation proceedings did

---

1. Decision of the Special Inquiry Officer, filed Dec. 27, 1963, at 13, 12. The criminal charges, involving alleged conspiracies to falsify official or public documents, apparently arose from petitioner's representation of numerous Chinese applicants for naturalization while she was an attorney in the Philippines.

2. Decision of Board, filed June 24, 1969, at 3, 4.

3. Decision of Board, filed Sept. 11, 1969, at 2, 3. (Footnote omitted.)

not amount to an abuse of discretion, and we will not disturb them. See Schieber v. INS, 461 F.2d 1078 (2d Cir. 1972) (*per curiam*), and cases cited therein. It was not improper for the Board to consider petitioner's convictions despite her counsel's affidavit indicating that a petition for a writ of error *coram nobis* would be filed.[4] See generally 1 Gordon & Rosenfield, Immigration Law and Procedure § 4.12d (1971). Petitioner also claims that she was unconstitutionally denied her right to assigned counsel in the various proceedings before officials of the Immigration and Naturalization Service (INS). While such a claim might raise grave issues in the abstract, see Haney, Deportation and the Right to Counsel, 11 Harv.Int'l L.J. 177 (1970), on the present record it is without merit.[5]

Petitioner's additional arguments are similarly unpersuasive, and, as already indicated, we deny the petition to review. One argument, however, although not strictly relevant to our present review, is nonetheless troubling and we feel compelled to comment on it. Briefly, in late 1962 petitioner sent her Philippine passport to the INS in connection with her first application for adjustment of status. That application was denied but the INS never returned petitioner's passport. Instead, without notifying her, the INS forwarded the passport to the Philippine government where it was invalidated. According to petitioner, this prevented her from leaving long ago for other countries in Europe where she had travelled extensively and knew the languages. Without a valid passport, petitioner apparently may be deported only to the Philippines. The effect, according to petitioner, is that she is being extradited to the Philippines without the benefit of an extradition treaty. Respondent argues that the passport had already been invalidated by the Philippine government in July 1962 and "Hence, the return of [petitioner's] passport would hardly have benefited her." That may have been true, but nothing in the record suggests that the INS is required to comply with a "Foreign Service Circular" issued in Manila to "All Philippine Diplomatic and Consular Establishments" or that the INS is qualified to determine for itself whether another country would have treated petitioner's passport as having been invalidated. In short, the INS's procedure may have been unfair and its conduct possibly unwarranted. We wish to make clear that our disposition of the present petition is without prejudice to the commencement of an appropriate proceeding in a federal district court in which those issues may be litigated and appropriate relief fashioned, if necessary.

Petition denied.

4. According to petitioner, a *coram nobis* petition was filed, alleging (1) inadequate representation by counsel and (2) petitioner's mental incompetency at the time of her plea. According to petitioner, on February 25, 1970, the state court denied the petition on the first ground without a hearing (a notice of appeal was filed) but ordered that a hearing be held on the issue of competency. Petitioner also informs us that a hearing was held although no decision has yet been filed.

5. For example, the record reflects that petitioner was represented by retained counsel from the outset of the deportation hearings in February 1963 until the hearing on November 8 of that year, at which time she informed the Special Inquiry Officer that "I decided to represent myself in this proceeding." On the initial appeal in 1963, petitioner was again represented by counsel who filed the notice of appeal and a brief on her behalf. That attorney subsequently withdrew and petitioner, who was an attorney in the Philippines, presented her own case at the oral argument before the Board. We also note that petitioner capably briefed and argued the present appeal in this court.